On to the next case. All right, our third case for this morning is Miller v. Southwest Airlines Company. Mr. Maurice. May it please the court, my name is John Maurice, counsel for appellants Jennifer Miller, Scott Poole, and Kevin England. Appellants are union represented employees who scanned their fingerprints to clock in and out of work for Southwest Airlines at Midway Airport. Because they allege they did not receive written notice and written consent under the biometric statute that's been discussed at length today, appellants filed a claim in the district court. As the court is aware, the district court found that that claim was preempted as a minor dispute. Is it your position that your clients have suffered injury in fact? Our position is that our clients have suffered injury in fact under Article III. We thought that it probably was. Your predecessor could have saved a lot of time by saying that. OK. Thank you, Your Honor. And yes, we argued that in the lower court. So the particular issue that is before the panel here, appellants asked the court to reverse the conclusion that the dispute presented was a minor one under the RLA. As the court is aware, under Hawaiian Airlines versus Norris, the question is, does the biometric claim at issue here require interpretation of the party's collective bargaining agreement? Appellants are union represented employees. There is a collective bargaining agreement. But does it in fact require an interpretation of provisions of the CBA, the collective bargaining agreement, in order to resolve the claim? All right. You're making good mid-course adjustments. Thank you. We appreciate that. So the district court looked at this and said disputes fall into two categories, major or minor, under the Railway Act. What's wrong with that? Here, appellants are disputing whether or not the RLA applies at all. This isn't a dispute. Well, there's backsliding. Excuse me, the Railway Labor Act. The Railway Labor Act, yes. It's a little bit of a thing. Yes, okay. So you're saying that because this is a statutory claim, what would take this out of the scope of the Railway Labor Act? Not specifically that it's a statutory claim, but because the questions that the district court on this record is going to need to answer do not implicate an interpretation of either the management rights provision or the collective bargaining rights provision in the collective bargaining agreement. But your opponent, Southwest, argues that, in fact, a couple of things bring it under the scope of the collective bargaining agreement. Number one, it deals with a sort of timekeeping system, and that's a management function. And number two, in the complaint, there is talk of the fact that the plaintiffs were not compensated for this use of their biometric data, and certainly wages is one of the most central parts any collective bargaining agreement covers. So why do those not pull it back into the collective bargaining agreement? With respect to the first part of your question, the timekeeping system implementation in particular, appellants are not challenging Southwest's decision to implement the timekeeping system at issue here, the Kronos 4500. Appellant has never contested Southwest's right to implement any kind of biometric timekeeping system that it wants. Appellants aren't aware of any Illinois law or other law prohibiting a timekeeping system. But what they have to do, plaintiffs allege, is because this particular timekeeping system collects biometric information, fingerprints in particular, they have to comply with the written notice and written release and consent requirements of the biometric statute. Well, but the statute says the person or his agent. And, of course, the union is the agent. So how could this case be decided without figuring out whether the union, as the exclusive bargaining agent, had consented? Appellants have two answers to that. The first is that the record here, it's Southwest's burden to show that the question of whether or not the union, vis-a-vis the collective bargaining rights provision, is a legally authorized representative. They have the burden to show that that's going to be an issue. Are you doubting that the union has been certified to represent the employees in this bargaining union? I'm not doubting that they've been certified. Then they are the authorized bargaining agent. Well, I thought you were saying that when this collective bargaining agreement was created, the union was representing these people, but the statute doesn't come along for another three years, 2008. And so one needs at least to link up. Were the plaintiffs using the union as their agent for wages, hours, and conditions of employment, et cetera? Does that include the state law that comes along three years later? Does it include a state law that's going to come along at any time during the term of the collective bargaining agreement? That's correct, Your Honor. That is what we are saying. And I thought you were also saying that the actual term in the biometric statute referring to – in fact, you have all sorts of citations about this – referring to the legally authorized representative means something more like a guardian that you might appoint for a disabled adult or a parent's position vis-a-vis a child or something of the sort, that it doesn't sweep in the union. I mean, does that mean that the union can consent to a medical procedure for a union member because they're an authorized agent? And that's precisely the perhaps absurd hypothetical that we present. And the nature of the statute, the nature of the Illinois Supreme Court's interpretation of the statute, and all those statutes with respect to genetic testing and HIV testing, all of those things indicate that this is a personal right, as the Supreme Court has called it. And, therefore, it's not something that without personal express authorization can be given away. So do you think the union would have the ability to consent to drug testing on behalf of employees? Unions do that all the time. Different – I'm not sure about the answer to that question. I'm not saying – Yeah, that's a common provision in the collective bargaining agreement. That's a common provision. Unions consent on behalf of employees to all sorts of procedures, of which drug tests are a good deal more invasive than fingerprint testing. Unions consent to collecting fingerprints before people are hired. It's a normal term and condition of employment. And the federal rule is the union is the exclusive bargaining agent for every term and condition of employment. So I have a great deal of difficulty seeing how we can avoid figuring out what the union has consented to. So did the union consent – let me give you a concrete example. Perhaps the union consented to the use of this machine for clocking in. Did the union consent also to a regime under which each individual member did not receive notice about the collection of his or her biometric information? Did the union consent to the transmission of the biometric information to third-party payors or processors? How much did the union consent to, if anything? And that's appellant's position is that the union can't – and there's been no argument that the rights that appellants have and the workforce in general has under BIPA have been modified in any way. And so the consent would need to come through some kind of written release. So the union would consent to the particular type of timekeeping mechanism, which you say you're not challenging anyway. That's correct. So that must – actually, that was not as clear to me as maybe it is to you, since it seemed to me that if people were saying I should have been paid more, that sounded like maybe you couldn't use it unless there was some readjustment of wages. I know there's an issue about an amended complaint, too, in which you tried to pare your case down to the biometric statute. Well, and to be clear, Your Honor, we are not challenging the portion of the district court's dismissal that result on Railway Labor Act grounds, the request for relief in the form of compensation. We're only challenging the fact that a biometric claim for statutory damages alone does not implicate any interpretation of the collective bargaining agreement, and certainly not on this record. And under the Biometric Act, there's a violation even if – it's not so much the collection. It's the collection without the notification. And I take it the notification might allow somebody to resign his job at Southwest Airlines if he doesn't want to work for a company that collects biometric information and go find a different job. That's absolutely right, Your Honor. In addition, this actually touches a bit on the Article III injury issue. The information, the notice, explains the nature of the privacy information. It's not clear when we give a fingerprint, for example, how long it's going to be collected, who has access to it, where it's stored, and what, in fact, we're giving up when we do that. And so, yes, that kind of informed consent is necessary to provide appellants, any union member, that option. That's where I keep getting into trouble because 740.14-15b.1 and 2 talk about the consent of the subject or the legally authorized representative. So that gets the union in. I have a separate concern. The parties haven't really addressed this about B.3. B.3 talks about receiving a written release executed by the subject of the biometric identifier. That sounds like the employer has to get a release directly from the employee and not from an agent. I wonder if that is preempted in a straightforward way. We need to consider that because that sounds like saying the worker and the employer have to negotiate directly about that particular subject. Can a state pass a law saying, notwithstanding federal labor law, there has to be direct negotiation with each individual employee about subject acts? I think the problem that appellants have with that particular characterization of the argument is that this is not a I'm not trying to characterize anybody's argument. I'm just pointing out that the statute in sub 1 and sub 2 talks about we're an agent. Sub 3 doesn't talk about an agent. That leads me to wonder whether the state has attempted to require direct bargaining on a particular topic. I don't think there's any need to bargain on the right to receive written notice and consent. No, you're not getting my point. Under sub 3, if you take sub 3 seriously in omitting the agency language, the employer cannot collect biometric information unless each employee individually executes a release. Collecting biometric information is unquestionably a term and condition of employment. Right? So sub 3 looks like it's saying there has to be individual bargaining and an individual release about a term and condition of employment. And, Your Honor, you're referring to B3? B3, right. Which only is the reference to the legally authorized representative. My understanding is that subsection B3 includes the legally authorized representative as a particular individual who can receive the notice. Okay. Maybe I've just misread it. If it includes a representative, that particular concern goes. And so, Your Honor, just to understand. It may be just a question of non-parallel construction confusing an amateur reader. It's one reason why I don't like acronyms. We're complete amateurs in dealing with this law. I've never seen it before in our lives. With luck, we'll never see it again. Oh, I think we're going to see plenty of it, I hate to tell you. But we do have a question. I want to get back to a preliminary question, which is whether the Railway Labor Act applies at all to this. The Railway Labor Act doesn't repeal every state statute that may touch on an employment relationship. There are some state statutes that, oh, I don't think so. You know, there are state privacy, common law privacy causes of action. Just because you work for an employer doesn't mean that the employer can publish information about you that is your private information.  And I understood you to be saying that the reason the district court mistook this was the district court was looking at the test for the distinction between major and minor disputes under the Railway Labor Act. Whereas, in fact, what we have before us is a question whether the statute applies to this particular state enactment. Judge Easterbrook has suggested this enactment is just like drug tests or just like lots of other things, and there certainly are plenty of things one can think of. But it doesn't apply to everything. There are cases where it doesn't apply. That's absolutely right. I think Hawaiian Airlines versus Norris is clear that the RLA doesn't preempt the entire field of legislation or common law that incidentally or intentionally affects workers' rights. Right. That's what I was relying on, the Hawaiian Airlines case. And so the question is, how do you decide where that line exists? Since, on the other hand, the Railway Labor Act has very broad preemptive scope, never mind whether it's complete preemption or defense preemption, but in the interest of keeping the trains running, so to speak, and the airlines, Congress was interested in providing a mechanism for the resolution of disputes that would be efficient, that would move forward. I think I go back to the question, which is whether or not the particular claim at issue, and on the record what questions will need to be answered to resolve that claim, actually implicates an interpretation of particular collective bargaining agreement provisions. And here we have two particular provisions that have been referenced, the management right and collective bargaining rights provision. The management rights clause primarily, right? The management rights clause is the first that the court relied on, and there's been no suggestion that the management rights clause, any interpretation of the management rights clause whatsoever, can modify or affect. Well, let me push you on this. You're agreeing that if Southwest, or that matter any other airline, wants to have this particular biometric time clock, that's fine with you. And I've suggested maybe that leaves your clients the right of exit if they don't, if they're offended by having their fingerprints collected or recklessly used by Southwest, emailing them all around the country to various agents. So at what level? So you're conceding that if management wants this, fine with us. So then you get to the next level, if management is going to have this, how do we comply with this written notice? How do we comply with the information functions that the statute sets out? That sounds like how you run a business too, doesn't it? And so your question, Your Honor, is how would under these circumstances? Why isn't that just as much under the management rights clause as the adoption of the time clock to begin with? The nature of complying with the statute? Yeah, the nature of the steps that you have to take to comply with the biometric statute. Because it's an independent right under state law vested in individuals. So give me another independent right under state law that affects the working relationship that's outside the Railway Labor Act. The right to file a workers' compensation claim. The lingual court addressed retaliation or wrongful discharge claims in response to exercising one's right under the Illinois workers' compensation laws. That similarly affects a condition of employment, but is, of course, an independent law that a defendant has to observe. The Supreme Court has said it's outside the scope of the Railway Labor Act. That's right. Yeah. So just to touch briefly in conclusion, to find that the particular claim on this record here without an ounce of evidence of written notice having been provided to anyone, the union or otherwise, the implications are abroad, a preemption of any claim against a major carrier. Thank you. So thank you very much. Ms. Siebert. May it please the Court, the judgment below should be affirmed. As counsel stated, plaintiffs are union represented. They work for Southwest Airlines as ramp agents. They are covered by a collective bargaining agreement that specifically says it's subject to the Railway Labor Act. Each workday, plaintiffs use a finger scan time clock to record their work time in order to get paid. Because plaintiffs are union represented, Southwest dealt with the union to implement finger scan timekeeping. But Southwest couldn't possibly, unless it really has a much better crystal ball than I own, back when it entered into this collective bargaining agreement, say, oh, and by the way, if three years from now the Illinois legislature should happen to pass a biometric information protection act, we're going to hold you union members subject to a bargain that your union never negotiated because it didn't have a very good crystal ball either. And we are not going to tell you anything about what we're collecting, how we're protecting it, who we're sending it to. There's a lot of speculation there and other aspects of the law that suggest that the use of the term authorized representative in this statute isn't necessarily referring to a union. So if the question is... Well, it's two questions. How is the union prospectively... Suppose Illinois passed a statute that said all people have to post on our website their most recent report from their primary care physician so that we can show the world that Southwest employees are the healthiest people around. And three years ago the union agreed to this collective bargaining agreement, hours, wages, time, arbitration. Do you think that people have allowed the union to agree to that statute on their behalf? I do, pursuant to the collective bargaining agreement. Really? And this is why. Because in Union Pacific this court noted that the bargaining agreement is a fluid entity. It changes over time as far as how it's interpreted. But it's about the workplace. Do you think collective bargaining agreements overwhelm all personal privacy interests? I don't, but... You've just pretty much said that it does. If you're supposed to post on a website your most recent medical report from your primary care physician, your blood pressure, your weight, your height,  Sorry, excuse me. Oh, go on. You had asked me in the context here with respect to the Biometric Information Privacy Act. And I'm trying to find out the limits of your position. You are obviously taking the position, I understand that, that whatever the union was doing three years before this statute was passed is somehow sufficiently within the scope of this statute that it has bound people to something that they never knew about, to rights that didn't exist at the time. Okay, fine. So I want to know how far that goes. If it goes to the Biometric Privacy Act, does it go to the Medical Records Disclosure Act, does it go to something else? Do you have to also report on an open website your comings and goings? It goes as far as those things which are negotiable and have been negotiated. And why is posting your medical records negotiable? I'm not stating that it goes that far. What I am stating... But you did say it went that far a few minutes ago. You did, but the statutory question is whether it's part of the terms and conditions of employment. Perhaps you're now doubting that it is. Yes. What I would submit is that privacy is a customary topic of collective bargaining. As this court recognized in the Amico opinion. And as your honors have said before, it's customary for unions to negotiate over specific privacy rights, such as drug testing. That is a customary topic of bargaining. BIPA doesn't require a particular form of notice. And employers could be, and in this case can be, were compliant with BIPA before it ever came out because of the work environment they have. In order to implement that... How did Southwest, on this record, comply with the notice requirements that the biometric statute imposes? I didn't see a word suggesting that there was such compliance. If you look at the record, I believe it's at A23-25, you'll see the declaration of Michelle Jordan. Miss Jordan testified that in October of 2005, before... Three years before the Biometric Privacy Act was passed. Yes. Before Southwest implemented the timekeeping system, it provided notice to the union and that the union acquiesced, did not object. But the statute requires at least maybe something in the collective bargaining agreement that imposes on the union the duty then to go notify its members. The Biometric Information Privacy Act creates a personal right to one's personal data. It's not quite the general data protection regulation of the European Union, but it's a significant statute and it's a personal right. And we're struggling with to what extent can that personal right be put in the hands of others, and you haven't told me anything to suggest that there was the foresight three years before there was this statute and anybody knew what its terms were, that the company was making sure somehow that its employees received the disclosures to which they are entitled by law. It's as though the company said, you know, yes, there's this Fair Debt Collection Practices Act, we're going to repeal it for our employees. But BIPA allows, and it's a very important point, one's legally authorized representative to negotiate away or release those rights. Well, you're interpreting legally authorized representative to include unions, and your opponent suggests that in context, in this statute, they don't. Now that raises the other question that Judge Easterbrook raised, can a state somehow reduce the coverage of the Railway Labor Act or any other federal statute for that matter? Different issue, not briefed. But your opponents certainly say that in context, perhaps even the B3 context, this is a personal right and that Southwest has not created a system with or without the union that protects it. BIPA sections 14, 15, B1, 2, and 3 all allow one's legally authorized representative to receive notice and to provide consent on one's behalf. So if somebody needed surgery, can the union, let's say a workplace injury, can the union agree? Maybe the person has religious objections to surgery, the union can override them? I'm limiting that statement to BIPA. I'm sorry, the Biometric Information Privacy Act, by its terms, is limited to biometric identifiers and biometric information. And the Illinois legislature has said that that type of information one's legally authorized representative can release. That's what I'm saying. Is it your court-appointed guardian? Easy to see why your court-appointed guardian would have the right to make decisions about your biometric data. Or is it just your union to whom you've delegated the power to negotiate wages, hours, and conditions of employment, but you're treating that delegation as though it has no outer limits at all. Your union is now in charge of your entire life. I'm not saying that at all. I'm saying that the union under BIPA can be the legally authorized representative. The union under what? Under the Biometric Information Privacy Act, and I apologize, Your Honor. It's an acronym that we've used commonly, and I apologize for that. Here you have to also look at what's the definition of a representative under the RLA. Under the RLA, Section 1, the RLA defines a representative to include any labor union designated by employees to act for Illinois. But that's a different statute. Do we have any reason to think that the Illinois legislature, when it passed the Biometric Information Privacy Act, was relying on the Railway Labor Act definition of representative? No, but we have no reason. No, they're two different statutes, two different sovereigns. We have no reason to discredit that included in legally authorized representative is all sorts of agency relationships. The legislature did not so limit it as appellants would have you do. So here, there is no additional requirement. The reason you look at this is the language, it's the purpose of the statute. What is this statute doing? It's trying to protect intimate personal data. Recognizing how that data, as it floats around the cloud and various servers, has been abused by malicious people. People might have a very strong interest in not having that data out there for potential hackers to see. Maybe they would rather not work for Southwest, if that's the way Southwest wants to run its workplace. People don't have a lot of choice in life, but they have a few choices left, and they may not really want. They're fingerprints floating all over the Internet. But timekeeping is a working condition, and the only way under the RLM. And I'm saying, I'm agreeing, if Southwest, your opponents concede, if Southwest wants to strip people of their privacy in their timekeeping arrangements, that's up to Southwest. But they don't have to work for Southwest. Whether these plaintiffs authorize the union as their sole and exclusive bargaining agent, and whether Southwest had the authority under its Management Rights Clause to implement this policy and provide the notice in the form it did. There's no notice. So provide the notice in the form of no notice, is what you're saying. That's not what the record says. Michelle Jordan's testimony, which was not contradicted by a threat. They told the union three years in advance of this statute that they were going to use this biometric time block. There were no legal rights in Illinois at that time that would have said they couldn't. There's nothing. But BIPA changes nothing about the form of the notice. In other words, what BIPA says in Section 1415B1, or B, is that you have to inform of the use, collection, and storage of biometrics. Southwest is simply saying that it did that through the union. It provided that notice. That it did so in 2006, and that the notice could be BIPA compliant, biometric act compliant at that time, is, again, prescient perhaps, but BIPA did not, the act did not require employers to re-become compliant if they already were. I just don't see where in your record the publication of the data retention and deletion policies. Not a word. Where is the written informed consent? Where does even the union say, oh, now that the biometric privacy statute is in place, we are giving you special written informed consent on behalf of the employees of Southwest that this is okay. No statement like that from the union, even having it your way, three years later when there is such a statute and there are these three requirements. This is why the contract interpretation is required to resolve this particular dispute. No, these are actions. This isn't interpretation of anything. This is the light red or green. Did you do this or not? You don't have to interpret a contract. The scope of the management rights clause. What the union signed away to the company, including directly above that provision, the right to implement reasonable work rules so long as advance notice was given to the union. What Southwest is saying that needs to be done here is that you have to look at the terms of the contract. Why do you have to if they can see that you can have this time system? You've won on that point. They can see that. It's not just about the system. It's whether the union, as plaintiff's legally authorized representative, under the act and their sole and exclusive bargaining agent under the contract, gave away to management in the management rights clause. The right not to comply with the state statute? Maybe that's what they gave away. BIPA allows compliance through the union. You've conceded that Southwest didn't give the union the written retention policies and data destruction policies. So if you want the union to be the representative, then it seems to me Southwest has to give the union, unless you want to say that the union could agree in advance that Southwest wouldn't have to comply with the statute. Southwest has conceded no such thing. What Southwest is saying is that in order to determine the communications with the union and what that entailed and whether those communications were within the bargaining agreement, within the scope of authority, requires an interpretation of the bargaining agreement. And I would remind the Court that the burden is very low. We just have to assert a non-frivolous argument. Well, that's if we're under the Railway Labor Act. That is not the standard that applies to whether the federal statute applies at all. That's a different issue. Once we're inside the federal statute, then major-minor is allocated by the non-frivolous standard. But if, as here, Southwest has put forth specific provisions of the contract and testimony uncontradicted on its end that it gave notice to the union and that the union consented consistent with BIPA, then this case is preempted. These claims are preempted. I think we understand your argument at this point. Thank you. Thank you. All right. So we all went over time on this, so I think we'll maybe just leave it at this. And the case will be submitted, taken under advisement.